Good morning. My name is Rick Ballinger of Morrison and Forster. I'm here on behalf of the petitioner, Mr. Arnold, and I have three points that I'd like to make briefly. First, Mr. Arnold's original 2005 appeal should have been granted. The BIA affirmed the immigration judge's order, unfortunately, based solely on the finding that Mr. Arnold was an aggravated felon. Subsequently, the BIA reopened the case sua sponte and reversed itself and correctly vacated the previous order and held that Mr. Arnold was not removable as an aggravated felon. Therefore, his first appeal, Mr. Arnold's first appeal should have been granted. The sole basis for it was extinguished. And that's the sole issue in Mr. Arnold's first petition before this court, the 2005 petition. And that reason alone would justify vacating the BIA's November 2005 decision and remanding for an additional hearing on Mr. Arnold's cancellation defense. The second point that I'd like to make, it turns to the issues underlying the 2006 petition for review. When the BIA exercised its sua sponte power to reopen the case and correctly held that Mr. Arnold was not an aggravated felon, it didn't follow through as it was required to do. The regulation 8 CFR 1003.2 little i requires the BIA to remand when further proceedings are necessary. And that's mandatory. It says shall return to the immigration judge, not may. And counsel, counsel, excuse me, I would like to ask you a question about jurisdiction. How does the case, can you distinguish it? How does it relate to jurisdiction? Yes, Your Honor. The question there was whether the BIA should have reopened, exercised its reopening power sua sponte. And the result is that that's a matter of discretion. Here, the BIA's decision to reopen the case sua sponte is not before the court. No one's challenging that decision. The issue before the court is a question of law, is whether having an open case before it, the BIA was required by the statute, the regulation, excuse me, to remand, which it was under the express language of the regulation. All right. Thank you. Thank you. Well, but did it have to reopen in the first place? No, Your Honor. It didn't. Yeah. So if it sua sponte reopens when it didn't have to, and it then fails to do what it should do if it proper, once it reopened, we still have jurisdiction to review that failure. Yes, Your Honor. The point is it went ahead and reopened. It wasn't a question of whether it should or should not have. No. It just opened, reopened. All right. That's right, Your Honor. We're pleased that it did reopen it. And having done so, it was required to be remanded at that point. And its reopening, it made the findings that there was not an aggravated felony. Correct. And so therefore, it should now be remanded for an evidentiary hearing. Exactly, Your Honor. Therefore, the sole basis for Mr. Arnold's removal at that point had been extinguished, and the BIA correctly vacated the lower judge's or the immigration judge's order and held that he was no longer removable as an aggravated felon. The remaining question is whether he's removable under the other removal charge, and Mr. Arnold needs to present his defense to that. The third point that I was going to make really is just that the question of whether he's an aggravated felon isn't before the court. The BIA made that determination, held it correctly that he's not, and that decision hasn't been challenged by the government. Some of the supplemental briefing made it look like maybe there was a question of whether that was an error, but that decision is final. Okay. I think we should hear if there are no further questions, I think we should hear from the government. You have some time to respond. May it please the Court. Breanne Cohen on behalf of the United States Attorney General. I think I'll start off by addressing the Court's jurisdictional questions, since that seems to be one of the main issues in this case. The government's position is that to the extent that the Board's suespontive responsibility First, it was not required to do so. Mr. Arnold was his removal proceedings had concluded. The time for a motion to reopen had expired, and so the Board as a matter of administrative grace extended a benefit to Mr. Arnold and exercised its limited suesponte authority. Now, the Board has recognized that that is an extremely limited power. It is not meant to circumvent the statutory and regulatory caps on motions to reopen. Well, are you suggesting that they violated the law, abused their discretion somehow in reopening this matter? No, Your Honor. I'm saying that the to the extent that they reopened for the aggravated felon, that certainly presented an extraordinary circumstances. Mr. Arnold had evidence that as of July 7, 2006, he was no longer an aggravated felon. That presents extraordinary circumstances because the aggravated felony finding attaches serious collateral consequences to an alien for prospective relief. So the Board decided that this was an extraordinary circumstance to reopen for that limited purpose. Now, nothing in the regulations limits that the Board's suesponte authority. In fact, the reason that in Ekiman the Court decided that it did not have jurisdiction, at least to the extent that the Court declines to exercise its suesponte authority, is because there are no meaningful standards by which this Court can determine how and when the Board decides to exercise its suesponte authority. And in Ekiman ---- Does Ekiman apply to this case? Since the circumstances were different, the Board suesponte reopened here. I think Ekiman applies to the extent that the Board ---- the Board basically decided that it would reopen for one purpose and not for another. To the extent that it declined to exercise its authority, that part of the decision is not before the Court to review. And that's exactly what Ekiman says. And again, I think the Board's decision points out why it decided not to reopen for the purpose of remanding for a further hearing. Mr. Arnold only became eligible for relief in July ---- on July 7, 2006, when the State court issued that order vacating the original sentence. Up until that point, he was an aggravated felon. When the Board determined that he was no longer an aggravated felon, it decided to absolve him of the collateral consequences, but it was not required to remand for further proceedings. Mr. Arnold was similar to any other alien who becomes eligible for relief after removal proceedings are over, after the time period for motions to reopen has expired. An analogous example would be if an alien who, while he's in removal proceedings, is a non-permanent resident and has eight years of continuous physical presence. His removal proceedings end, and then two years from now, attempts to claim that the Board should reopen because he now has 10 years of continuous physical presence. The Board is simply not required to do so, and to hold otherwise would circumvent sort of the policy interest and finality of immigration proceedings. Well, how is he better off now as a result of the reopening than he was before? He's better off now because there are a number of consequences that attach when you're found an aggravated felon. For example, there are bars to reentry once you've been removable. For some aliens, it's 10 years. For other aliens, it's 20 years. For aggravated felons, it's a permanent bar. Similarly, if Mr. Arnold returned to Belize and for some reason had a new claim, an asylum claim or something else, he would be barred from asylum. So there are a number of prospective and forward-looking consequences that the Board absolved him of by using that limited sua sponte authority. And so your position is that that's a sensible thing for the Board to do? Yes, Your Honor, because he is better off than he was beforehand. Is it also your position that he had the opportunity to have been heard on the removable status at some point? And if so, what is the support for that position? Yes, Your Honor. Mr. Arnold had a meaningful opportunity to present his claim. The burden for establishing eligibility for cancellation of removal was on Mr. Arnold. But didn't the judge indicate that they would first address the question of whether he was an aggravated felon, and depending upon that finding, he would have an opportunity to return later for purposes of adjudicating the removability issue? Yes, Your Honor, that is correct. And in this case, these findings were sort of overlapping because the removability finding also acted as a bar to his eligibility for relief. So to the extent that he needed to prove that he is statutorily eligible, that is his burden to show that. Because Mr. Arnold did not show that he was not an aggravated felon, the IJ was not under any obligation to proceed on the merits, which would have been at that point a waste of resources, since it was clear that he was statutorily ineligible for relief at that time. Counsel, I have a question about the BIA regulations. Under its regulations, this is ACFR 1003.2i, if the BIA directs a reopening, which it did here, and further proceedings are necessary, the record shall, I emphasize shall, be returned to the immigration court. Why doesn't that plainly apply here? And furthermore, in a sense of fairness, when he was prohibited from presenting any evidence about cancellation of removal, why doesn't that regulation apply here? Your Honor, that regulation doesn't apply because to the extent that I think the Board sort of addressed two requests that Petitioner had with this motion to reopen. One was to say that he's no longer an aggravated felon, and the second was to allow him to apply for relief. Now, with regard to the first one, once the Board looked at that state court order and determined that he was no longer an aggravated felon, just based on the face of that document, no further proceedings were necessary at that point. To the extent that he was requesting relief, again I would point out that Mr. Arnold's not in a situation different than any other alien who becomes eligible for relief later. So with regard to the request for relief, proceedings were not necessary because the Board determined it would not reopen for that purpose. And so I think that the Board decided that it would reopen for the one purpose to put Mr. Arnold in a better position with regard to consequences of the aggravated felony status, but declined to do it for the purpose of hearing on his merits. And since that question of whether or not he was an aggravated felon was something that the Board could decide in the first instance as a question of law, then the Board was not required to conduct any further hearings on that issue. And in terms of that ---- Well, counsel, it just seems so grossly unfair. You have a timeless argument, but it seems to me that the BIA did reopen the proceedings to determine if Petitioner was not an aggravated felon. Once they did that, to deny him any hearing on his cancellation of removal when he had been prohibited from giving any evidence seems grossly unfair and a lack of due process. I would argue that Mr. Arnold did receive a benefit from that reopening. And again, that goes back to avoidance of consequences. Mr. Arnold is not meaningfully in a different situation than any other alien who becomes eligible later for relief. To require the Board to remand for further proceedings on the merits of a claim for which he subsequently becomes eligible would cause the Board to do more than exercise its sui sponse authority in only limited and exceptional circumstances. Counsel, is it ---- the explanation that we got from the Board is that the Respondent had the opportunity to establish eligibility for relief before the immigration judge, and we see no reason to grant the pending untimely motion to reopen. I assume that's for that purpose, apart from the other purpose of the aggravated felony. Is that ---- is it really accurate to say that he had the opportunity? I think it is to the extent that he had the opportunity to make the threshold showing, which is that he met the three statutory requirements for ---- excuse me, for cancellation and removal for permanent residence, which is that you have a certain amount of time in the United States, certain amount of time as a permanent resident, and the third statutory requirement, which is that you're not an aggravated felon. Because he could not make that threshold showing, there's no reason to allow him to present the merits. Well, yeah, but now he can. Now he can, but his proceedings are final. It's simply too late. It's kind of a catch-22, isn't it? It is. But, you know, the Board, I think if we look at it to the extent that the Board really was giving Mr. Arnold the benefit, it could have declined entirely to exercise its sui sponse authority, in which case this Court would clearly lack jurisdiction over the decision. Right. I understand. So I think that the Board was doing a service to Mr. Arnold because there are serious consequences, and it did find that it's clear that he's no longer an aggravated felon. Rather than make him challenges down the road if he becomes subsequently eligible for relief, we'll go ahead and correct that status as of now, but we're not going to send it back for further proceedings when he's already had that opportunity. And at the time, he simply was not eligible. Did he have the time requirements? I believe he did have all the other requirements. He met all the other requirements. See, that's the problem.  If he were trying to take advantage of the intervening time, it would be a different situation. That's right. Okay. Thank you. Thank you. You've used your time pretty much. Mr. Ballinger. Very briefly, Your Honor. There are two appeals, there are two petitions here, and none of the discussion we just had went to the first one, which is in his first petition went to the November 30th, 2005, order of the BIA. The BIA vacated the entire basis for that. It held that he's no longer removable as an aggravated felon. That leaves him being removed under another count, and he hasn't had a chance to present that defense. On the record, before the IJ, he did establish his prima facie case for cancellation, except for the aggravated felon, which was the question that led to. Well, what's the authority? You know, I guess I'm trying to, what? What is the legal theory here? Is there? It's a deprivation of due process, Your Honor. He wasn't given a chance to present his defense. Because the immigration judge said once we decide the issue of the aggravated felony, that may be the end of it, but if it's not the end of it, then you'll have this opportunity. We're not saying there's anything wrong with that. But the question is entitled to a hearing. So the denial of the due process is when? The due process was denied when the board incorrectly held that he was an aggravated felon, and we petitioned that. Yeah. And now, again, when the board corrected itself and said he's no longer removable as an aggravated felon. But then when we charged him, he hadn't had his defense. So he never had a hearing. No. It's a procedural depressive. The record shows the immigration judge deferring ruling, had that hearing. One final point. We disagree that he became ineligible or eligible later. He was never an aggravated felon. As of April 2005, when he entered his sentence was modified at that point. And the government's interpretation of the July order from the L.A. Superior Court in 2006 is entirely inconsistent with the case they cited in the supplemental briefing, which says that you can't come in, the state courts are not allowed to come in and rewrite a sentence to change immigration effects. What Judge Landon was doing was clarifying that this man was never an Okay. Any further questions? Thank you. On behalf of the court, I'd like to thank Petitioner's Council's participation in our pro bono program. It's greatly appreciated.
judges: Schroeder, Reinhardt, Rymer